UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
─────────────────────────────────────────

NORTH ATLANTIC STATES REGIONAL
COUNCIL OF CARPENTERS, LOCAL
UNION No. 290,

                Petitioner,

          v.

T20 WORLD CUP USA, INC.,

                Respondent.

**MEMORANDUM & ORDER**
24-CV-07172 (HG)

**HECTOR GONZALEZ**, United States District Judge:

      Petitioner, North Atlantic States Regional Council of Carpenters, Local Union No. 290, has filed a petition (the "Petition") pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"), to confirm an arbitration award issued against Respondent T20 World Cup USA, Inc. *See* ECF No. 1 (Pet.). Respondent has moved to dismiss the Petition. *See* ECF No. 13-3 (Mot. to Dismiss). For the reasons that follow, Respondent's motion is denied, and the Petition is granted.

## BACKGROUND

      Petitioner is a labor organization as defined by Section 2(5) of the LMRA. ECF No. 1 ¶ 2; 29 U.S.C. § 152(5). Respondent is, on Petitioner's information and belief, a Delaware corporation with addresses in Colorado and Texas. ECF No. 1 ¶ 3. On March 22, 2024, Petitioner and Respondent executed a Memorandum of Agreement (the "Agreement") under which Petitioner agreed to supply carpentry labor for the construction and removal of a temporary cricket stadium in Eisenhower Park, East Meadow, New York (the "Project"). *Id.* ¶ 6; ECF No. 1-1 (Agreement).

Petitioner alleges that the Agreement incorporates by reference a collective bargaining agreement (the "CBA") executed by Petitioner and the Association of Wall, Ceiling, and Carpentry of New York, Inc. (the "Association"). *See* ECF No. 1-2 (CBA); ECF No. 4 at 4 (Pet. Mem.).[1] Article Four of the CBA contains a "Grievance and Arbitration" procedure for "any dispute arising from" its provisions whereby a "Joint Committee"[2] hears such disputes and issues decisions that are "final and binding." *See* ECF No. 1-2 at 4.

On March 27, 2024, carpenters provided by Petitioner began work on the Project. ECF No. 1 ¶ 10. Respondent commenced dismantling the Project on or about June 13, 2024. *Id.* ¶ 11. A dispute arose on or about June 24, 2024, when Respondent barred Petitioner's carpenters from continuing carpentry work during dismantling, even as dismantling work continued. *Id.* ¶ 12. Petitioner notified Respondent of its grievance on June 27, 2024, and requested that its carpenters be allowed to resume work. *Id.* ¶ 13. Unable to resolve the dispute, Petitioner requested a Joint Committee hearing on or about July 2, 2024, pursuant to the CBA. *Id.* ¶ 14. On July 22, 2024, the Association noticed the hearing for August 9, 2024, and Petitioner forwarded this notice to Respondent the same day. *Id.* ¶¶ 15–16. On August 1, 2024, Respondent requested the hearing be rescheduled, and Petitioner agreed, asking Respondent to provide alternative dates. *Id.* ¶¶ 17–18. The parties agreed to hold the hearing on September 19, 2024, and the Association issued a revised notice on August 29, 2024, which Petitioner also sent to Respondent. *Id.* ¶¶ 18–20. Between August 1 and September 18, 2024, Petitioner received no further communication from Respondent. *Id.* ¶ 21. Less than 24 hours before the hearing,

---

[1] Unless otherwise indicated, when quoting cases and the parties' papers, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

[2] The "Joint Committee" consists of six members, three appointed by Petitioner and three appointed by the Association. *See* ECF No. 1-2 at 4.

2

Respondent contacted Petitioner to request another postponement. *Id.* ¶ 22. Petitioner agreed to consider the request if Respondent covered the Petitioner's attorney's travel costs, but Respondent never responded. *Id.* ¶ 23. Respondent separately asked the Association for an adjournment on September 18, 2024, which the Association denied. *Id.* ¶ 24. A Joint Committee hearing proceeded on September 19, 2024, where Petitioner presented evidence that Respondent breached the Agreement by preventing its carpenters from working during dismantling and claimed $127,270.79 in damages for unpaid wages and benefits. *Id.* ¶¶ 25–26. Respondent did not attend the Joint Committee proceeding. *See* ECF No. 13-3 at 7. The Joint Committee issued a written award on September 19, 2024, finding unanimously that Respondent violated the Agreement and owed Petitioner $127,270.79 (the "Award"). ECF No. 1 ¶¶ 27–28; ECF No. 1-6 (Award). The Association delivered the Award to Respondent on October 3, 2024, and Petitioner, through counsel, formally demanded compliance the following day. *Id.* ¶¶ 29–30. According to Petitioner, Respondent has neither responded to nor complied with the Award. *Id.* ¶ 31.

Petitioner brought this action under Section 301 of the LMRA to confirm and enforce the Award on October 11, 2024. *See id.*; *see also* ECF No. 4 (Pet'r's Mem.). On February 12, 2025, Respondent filed its motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim. ECF No. 13-3. Petitioner filed an opposition on March 14, 2025. ECF No. 14 (Pet'r's Opp'n). On April 1, 2025, Respondent filed its reply, ECF No. 16 (Reply), and on April 16, 2025, Petitioner filed its sur-reply, ECF No. 19 (Sur-Reply).

3

## LEGAL STANDARDS

### A. Rule 12(b)(1)

When a party moves to dismiss under Rule 12(b)(1) as well as on other grounds, courts "consider the Rule 12(b)(1) challenge first" because if a court finds that it lacks subject matter jurisdiction, then the respondent's other "defenses and objections become moot and do not need to be determined." *Daly v. Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019). "A district court properly dismisses an action under [Rule 12(b)(1)] for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the [petitioner] lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms. S.à.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015). In considering a motion to dismiss for lack of subject-matter jurisdiction, a "district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

### B. Rule 12(b)(6)

Respondent also seeks dismissal for failure to state a claim pursuant to Rule 12(b)(6). "Where, as here, a respondent moves to dismiss a petition to confirm or vacate an arbitration award pursuant to Rule 12(b)(6), the court treats the petition as it would a complaint." *Tanjutco v. NYLife Sec. LLC*, No. 23-cv-4889, 2024 WL 4135686, at *7 (S.D.N.Y. Sept. 10, 2024). Therefore, if a petition fails to present "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the deficient claims must be dismissed. *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In construing the pleading, the Court must "accept as true all factual

statements alleged in the [petition] and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, those factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a [petition] suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678.

### C.  Arbitration Awards

"[A]rbitration awards are not self-enforcing"; instead, "they must be given force and effect by being converted to judicial orders by courts." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006). The Second Circuit has "repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007). This deference promotes the "twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71–72 (2d Cir. 2012). "[R]eview of an arbitration award under the LMRA is . . . very limited." *NFL Mgmt. Council v. NFL Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016). Courts may not review an arbitrator's decision on the merits but may "inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *Id.* The Court treats the decisions of the Joint Committee in the same way it would the decision of a third-party arbitrator. *See Caldarera v. Int'l Longshoremen's Ass'n, Loc. 1*, 765 F. App'x 483, 487 (2d Cir. 2019) ("We are as bound by the [Labor Relations Committee]'s interpretation of the CBA as we

would be by an arbitral award."); *see also Gen. Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963) ("[I]f the award at bar is the parties' chosen instrument for the definitive settlement of grievances under the [CBA] . . . it is of course not open to the courts to reweigh the merits of the grievance.").

## DISCUSSION

### I.     The Court Has Subject-Matter Jurisdiction

"Section 301 of the LMRA supplies jurisdiction for suits for violation of contracts between an employer and a labor organization." *Chelsea Grand, LLC v. New York Hotel & Motel Trades Council*, 629 F. App'x 152, 154 (2d Cir. 2015). "[T]he Supreme Court [has] defined 'contracts,' as used in Section 301(a), to include 'agreement[s] between employers and labor organizations significant to the maintenance of labor peace between them,' whose 'terms affect the working conditions of the employees.'" *Elite Limousine Plus, Inc. v. Dist. 15 of the Int'l Ass'n of Machinists & Aerospace Workers*, No. 05-cv-0010, 2006 WL 2434473, at *3 (S.D.N.Y. Aug. 22, 2006) (quoting *Retail Clerks Int'l Ass'n v. Lion Dry Goods*, 369 U.S. 17, 28 (1962)). The Agreement falls within this definition of contracts. First, it is undisputed that Petitioner is a labor organization as defined by Section 2(5) of the LMRA. ECF No. 1 ¶ 2; 29 U.S.C. § 152(5). Second, the terms of the Agreement affect the working conditions of Petitioner's carpenters. *See* ECF No. 1-1 ¶ 1 ("Carpenters shall perform work on the Project in accordance with the terms and conditions of the [CBA]."). That is sufficient to exercise federal jurisdiction. *See Elite Limousine*, 2006 WL 2434473, at *3 (finding that "the exercise of federal jurisdiction is proper" where the contract was between a labor organization and an employer and governed "certain terms and conditions of the employer's relations with its employees").

Respondent contends that "since the Respondent was not a party to the CBA, there is no actual controversy under LMRA § 301 and therefore, this Court lacks subject matter jurisdiction to hear the Petition." ECF No. 13-3 at 12. However, as discussed below, the Court finds that the CBA was incorporated by reference in the Agreement. *See infra* § II. Furthermore, the Second Circuit has found "that parties [are] bound to arbitrate under arbitration clauses they never signed, where those clauses were contained in other documents that were incorporated by reference." *Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 282 F.3d 92, 97 (2d Cir. 2002). Accordingly, because the Agreement constitutes a "contract" under the LMRA and incorporates the CBA, the Court has jurisdiction over this Petition under the LMRA. *See Bldg. Indus. Elec. Contractors Ass'n v. Patriot Elec. Corp.*, No. 22-cv-07653, 2024 WL 22762, at *5 (E.D.N.Y. Jan. 2, 2024) ("Because the dispute arises from the CBA and the CBA was entered into by employers and a union, this court has jurisdiction under the language of the statute.").

II.     **The Agreement Incorporates the CBA**

Respondent argues that the Award should be vacated[3] because "[t]he agreement in no way incorporates the CBA and in no way binds the Respondent to the CBA, including the jurisdiction of the Joint Committee to hear disputes arising under the CBA." ECF No. 13-3 at 9. Furthermore, Respondent contends that "since the Respondent was not a party to the CBA, there is no actual controversy under LMRA § 301 and therefore, this Court lacks subject matter jurisdiction to hear the Petition." *Id.* at 12. Finally, Respondent argues that "the Joint Committee did not have jurisdiction to hear the dispute between the Petitioner and the

---

[3]     The Court construes Respondent's motion to dismiss also as a motion to vacate the Award. *See Abondolo v. Jerry WWHS Co.*, 829 F. Supp. 2d 120, 124 (E.D.N.Y. 2011) ("Although not characterized as such by the Respondent, because the Respondent is seeking a determination as to the arbitrability of the underlying dispute . . . , the Court construes the Respondent's motion to dismiss also as a motion to vacate the Arbitration Award.").

7

Respondent, and as such, the Petitioner has failed to state a claim upon which relief can be granted." *Id.* at 18. All of Respondent's arguments rely on the same premise—that the CBA was not incorporated in the Agreement and that therefore the CBA's arbitration provisions are inapplicable to Respondent. Because the Court finds that the CBA was incorporated by reference in the Agreement, Respondent's arguments all necessarily fail.

With respect to incorporation by reference, the Second Circuit has stated that "[p]arties to a contract are plainly free to incorporate by reference and themselves *inter sese* to . . . terms that may be found in other agreements to which they are not a party." *Ronan Assocs., Inc. v. Loc. 94–94A–94B, Int'l Union of Operating Eng'rs*, 24 F.3d 447, 449 (2d Cir. 1994) (finding that a collective bargaining agreement, including its arbitration provision, was incorporated by reference in a contract). "To determine whether a contract has incorporated a document by reference, courts look to whether a reasonable person would understand the specific document to be incorporated by reference, in other words, an objective standard." *Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 517 (S.D.N.Y. 2018), *aff'd*, 774 F. App'x 714 (2d Cir. 2019). Under federal law,[4] "[c]ourts consider two factors in making this determination: (1) whether the

---

[4] The parties do not address the proper choice of law for this motion. But it is of no moment as the standard for incorporation by reference is the same under either federal or New York law. *See Torres v. Major Auto. Grp.*, No. 13-cv-0687, 2014 WL 4802985, at *7 (E.D.N.Y. Sept. 25, 2014) ("Under New York law and the law of the Second Circuit, two essential elements must be satisfied before a document will be deemed to have been incorporated by reference into another instrument or agreement. . . ."). Additionally, both parties' briefs cite to the same standard for incorporation by reference. *See* ECF No. 16 at 8 (citing the standard from *Torres*, 2014 WL 4802985, at *7); ECF No. 19 at 5 (same). However, for the sake of completeness, the Court notes that federal law applies because when a party "alleges a violation of a labor contract, the Supreme Court has held that such claim is preempted by [S]ection 301 and must . . . be resolved by reference to federal law." *Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003). Furthermore, "[q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Id.*

allegedly incorporated document is expressly identified and so referred to and described in the instrument that the paper may be identified beyond all reasonable doubt[,] and (2) whether the language incorporating the document clearly communicates that the purpose of the reference is to incorporate the referenced material into the contract." *Id.* Here, the Agreement provides in relevant part:

> 1.  **Manpower.** The Union shall provide T20 USA with six (6) New York State registered apprentices, 6 Journeypersons, and 1 Foreman, for a total of 13 individuals ("Carpenters") commencing on March 25, 2024. Such Carpenters shall perform work on the Project *in accordance with the terms and conditions of the North Atlantic States Regional Council of Carpenters, Local Union No. 290 Collective Bargaining Agreement with the Association of Wall, Ceiling, & Carpentry of New York ("Collective Bargaining Agreement")*. These Carpenters shall be on the Project site anytime "carpentry work" is being performed at the Project. "Carpentry work" shall be defined as it is in the Collective Bargaining Agreement.
>
> 2.  **Paymaster.** All Carpenters provided by the Union *shall be paid in accordance with the terms and conditions of the Collective Bargaining Agreement*. Such payment to the union Carpenters shall be made through a carpenters union signatory paymaster.
>
>   […]
>
> 7.  **Recognition.** T20 USA hereby recognizes the Union as the exclusive bargaining representative for the Carpenters specified in paragraph 1 and provided pursuant to this Agreement on the Project only. The Parties understand and agree that T20 USA is not required to sign or be a signatory to any collective bargaining agreement between the Union and any signatory contractor/employer association as a condition of performing work within the scope of this Agreement.

ECF No. 1-1 ¶¶ 1–2, 7 (emphasis added). The first factor is satisfied as it is beyond dispute that the Agreement identifies the CBA. Respondent's first argument that "the CBA was not incorporated into the Agreement, as the Respondents neither had knowledge of nor assented to the terms of the CBA," is meritless. ECF No. 16 at 9. Respondent's "failure to read a duly incorporated document does not excuse [its] obligation to be bound by [the incorporated document's] terms." *Carovillano v. Sirius XM Radio Inc.*, No. 23-cv-4723, 2024 WL 3460040,

9

at *7 (S.D.N.Y. July 18, 2024); *see also Pagaduan v. Carnival Corp.*, 709 F. App'x 713, 716–17 (2d Cir. 2017) (finding that the plaintiff was bound by an incorporated arbitration clause despite his arguments that "he was unaware of the arbitration clause; that he was never told about it; and that he never consented to incorporation by reference of any additional terms").

The second factor is likewise satisfied. Respondent's argument that the Agreement "does not include a provision binding the Respondent to the terms of the CBA" is contradicted by the Agreement's plain language. *See* ECF No. 13-3 at 8. Paragraphs 1 and 2 of the Agreement each require that work and payment for that work occur "in accordance with the terms and conditions" of the CBA. ECF No. 1-1 ¶¶1–2. Although the parties to a contract need not "use a rote phrase or a formalistic template to effect an incorporation by reference," *see Torres*, 2014 WL 4802985, at *9, the phrase "in accordance with" clearly communicates that the purpose of the reference is to incorporate the CBA in the Agreement. *See Miller*, 291 F. Supp. 3d at 517.

Moreover, the Agreement's reference to the CBA's definition of a key term confirms the parties' intent to be bound by the CBA. Paragraph 1 of the Agreement states: "'Carpentry work' shall be defined as it is in the Collective Bargaining Agreement." ECF No. 1-1 ¶ 1. The fact that the Agreement uses the CBA to define a key scope term ("carpentry work") reinforces the conclusion that the CBA is incorporated as an operative instrument—not a background document. *See Kassover v. Essence Partners*, No. 04-cv-5505, 2007 WL 9672541, at *3 (E.D.N.Y. Mar. 31, 2007) (determining whether a document is incorporated by reference "depends on the extent to which it is relied upon and made use of").

Finally, Respondent's argument that Paragraph 7 of the Agreement "demonstrates [that] Respondent is not bound by the terms of the CBA" borders on being specious. ECF No. 16 at 7. Paragraph 7 provides that "T20 USA is not required to sign or be a signatory to any collective

bargaining agreement between the Union and any signatory contractor/employer association as a condition of performing work within the scope of this Agreement." ECF No. 1-1 ¶ 7.  But this does not undercut the incorporation of the CBA's terms for the limited purpose of this Agreement.  *See Utopia Studios, Ltd. v. Earth Tech, Inc.*, 607 F. Supp. 2d 443, 446–47 (E.D.N.Y. 2009) ("The Second Circuit has held that a nonsignatory to a particular agreement can be bound by an arbitration clause in that agreement where the nonsignatory enters into a separate contract that incorporates the arbitration provision." (citing *Thomson–CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 776–77 (2d Cir.1995)).  Rather, Paragraph 7 makes clear that Respondent's obligations arise only under this contract (including with the incorporated CBA), and not as an actual signatory to the CBA.  *See* ECF No. 1-1 ¶ 7 ("[Respondent] hereby recognizes the Union as the exclusive bargaining representative for the Carpenters specified in paragraph 1 and provided pursuant to this Agreement on the Project *only*." (emphasis added).  Interpreting the Agreement so as not to incorporate the CBA would render Paragraph 7 meaningless, violating the settled canon that contracts must be construed to give effect to all provisions and avoid surplusage.  *See L. Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010) (explaining that courts should read contracts as "to safeguard against adopting an interpretation that would render any individual provision superfluous").  Paragraph 7 makes sense only if the CBA is otherwise incorporated; it preserves Respondent's non-signatory status to union-wide agreements while presuming the enforceability of CBA terms as applied to this specific Project.

   Even if the incorporation by reference were construed narrowly to apply only to the CBA's manpower and payment provisions, the present dispute arises squarely under those provisions.  *See Miller*, 291 F. Supp. 3d at 518 ("[I]ncorporation by reference is limited to the

11

section and purpose for which the incorporated document is identified."). Petitioner alleges that Respondent barred its Carpenters from continuing carpentry work during dismantling, even though such work was allegedly still underway. ECF No. 1 ¶ 12. This, Petitioner contends, contravenes Paragraph 1 of the Agreement, which requires that "Carpenters shall be on the Project site anytime 'carpentry work' is being performed," with "carpentry work" defined expressly by reference to the CBA. ECF No. 1-1 ¶ 1. This dispute thus turns on whether the work being done qualified as "carpentry work" within the meaning of the CBA—a question that directly implicates the incorporated CBA definition and payment provision. Furthermore, the CBA plainly states that "any question relating to . . . interpretation or any dispute arising from any provisions [of the CBA] shall be subject to the [CBA's] grievance and arbitration procedure." ECF No. 1-2 at 4. As such, even under a theory of limited incorporation, the CBA's arbitration provision governs the very conduct at the heart of this controversy. Therefore, the Court finds that the CBA's arbitration provision was incorporated in the Agreement and Respondent assented to the Joint Committee's resolution of this dispute. *See Trs. of the Dist. Council No. 9 Painting Indus. Ins. Fund v. Pal AMG Inc.*, No. 22-cv-06105, 2023 WL 2786821, at *3 (S.D.N.Y. Apr. 5, 2023) (finding "that the parties agreed to arbitrate their claim" where the dispute fell within the scope of the incorporated CBA's "broadly worded arbitration clause").

### III. The Award Is Affirmed

As discussed earlier, "a federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential—indeed, among the most deferential in the law." *NFL*, 820 F.3d at 532, 536 (noting the LMRA's "particular emphasis on private arbitration of grievances" as means of "promoting industrial stabilization"). "Confirmation of a labor arbitration award under LMRA § 301 is a summary proceeding that merely makes what is already a final

arbitration award a judgment of the Court." *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Formula 1 Builders, LLC*, No. 17-cv-1234, 2017 WL 1483369, at *3 (S.D.N.Y. Apr. 25, 2017). "[A]n arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992). Here, the Court finds the Petition to be well-supported by the record, particularly given the deferential LMRA standard.

During the Joint Committee proceedings, Petitioner submitted ample evidence, including: the Agreement; the CBA; "shop steward reports for the Project"; "union rate sheets"; "the names of carpenters who performed work at the Project"; "the correspondence history between the Association, [Petitioner], and [Respondent]"; and "the [Petitioner]'s damages calculation." ECF No. 1-6 at 1. "The Joint Committee considered the terms and conditions of the [Agreement] and determined that, per its terms, the agreed upon number of union carpenters should not have been locked out during the dismantle." *Id.* at 1–2. The Joint Committee then ordered Respondent "to pay all wages and benefits for all hours of work owed under the [Agreement] to which it was bound and denied by locking union carpenters out of the Project between June 24, 2024[,] and July 22, 2024[,] in the total amount of $127,270.79." *Id.* at 2. The $127,270.79 figure was calculated by averaging the daily hours worked by journeymen and apprentices (regular, overtime, Saturday, and Sunday hours) before the lockout, applying those averages to the lost work period (June 24–July 22, 2024), and then computing the corresponding wages and benefits for each worker classification. *Id.* Accordingly, because "there is much more than a barely colorable justification for the outcome reached," *Pal AMG*, 2023 WL 2786821, at *4, the Court affirms the Award.

### IV. Attorney's Fees and Costs

Petitioner requests $1,552.50 in attorney's fees and $405.00 in costs (the filing fee) arising from this confirmation action. *See* ECF No. 1 ¶¶ 38–40; *see also* ECF No. 1-9 (Fee Table). Generally, "in a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award." *Int'l Chem. Workers Union, Loc. No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985). Section 301 of the LMRA does not provide for the recovery of attorneys' fees. *Id.* "However, because a court may, in the exercise of its inherent equitable powers, award attorney's fees when opposing counsel acts in bad faith, attorney's fees and costs may be proper when a party opposing confirmation of arbitration award refuses to abide by an arbitrator's decision without justification." *N.Y.C. Dist. Council of Carpenters v. Metro Furniture Servs. LLC*, No. 11-cv-7074, 2012 WL 4492384, at *4 (S.D.N.Y. Sept. 28, 2012). "In the context of confirmation proceedings, the guiding principle has been stated as follows: when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded." *Formula 1*, 2017 WL 1483369, at *4.

Here, an award of fees and costs is appropriate. By entering into the Agreement, Respondent agreed to the submission to arbitration of disputes pursuant to the CBA. Respondent failed to participate in the arbitration proceeding, despite having been duly notified of the hearing, which was set for a date Respondent itself had requested. *See* ECF No. 1 ¶¶ 13–25; ECF No. 1-4 at 10–22 (Correspondence); ECF No. 13-3 at 7. Following the Joint Committee's decision that Respondent violated its obligations under the Agreement, Respondent failed to satisfy any portion of the award. ECF No. 1 ¶ 31. The Court finds that these inactions constitute bad faith. *See Metro Furniture*, 2012 WL 4492384, at *4 (finding that respondent's "inaction in

14

the arbitration hearings" constituted bad faith).  Finally, awarding attorney's fees will "further the federal policy in favor of settling labor disputes by arbitration."  *See Formula 1*, 2017 WL 1483369, at *5.  Accordingly, Petitioner is entitled to recover reasonable attorney's fees and the court costs for this confirmation action.

In support of its request for fees and costs, Petitioner submitted an invoice listing the tasks performed and billed hours.  *See* ECF No. 1-9.  In total, Petitioner incurred 6.75 hours of legal work at a rate of $230 per hour.  *Id.*  Petitioner's costs consist solely of the $405 court filing fee.  ECF No. 1 ¶ 39.  The Court has reviewed these contemporaneous records and has determined that the amounts requested are reasonable.  *See Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both [the Second Circuit] and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a presumptively reasonable fee.").

Accordingly, the Court grants Petitioner's request for attorney's fees and costs in the amount of $1,957.50.

## CONCLUSION

For the reasons explained above, the Petition is granted and Respondent's motion to dismiss is denied.  The Clerk of Court is respectfully directed to enter judgment in favor of Petitioner and against Respondent in the amount of $129,228.29—the sum of the Award, attorney's fees, and costs—and to close this case.  Post-judgment interest will accrue on the Award ($127,270.79) at the statutory rate pursuant to 28 U.S.C. § 1961 starting from September 19, 2024, the date of the Award.  *See* ECF No. 1-7 at 4–5; *see also N.Y.C. Dist. Council of Carpenters v. Nguyen Custom Woodworking LLC*, No. 18-cv-3970, 2018 WL 5919520, at *2 (S.D.N.Y. Nov. 13, 2018) ("Awarding post-judgment interest under § 1961 is mandatory and

applies to actions to confirm arbitration awards."); *Mason Tenders Dist. Council of Greater N.Y. & Long Island v. Circle Interior Demolition, Inc.*, No. 07-cv-11227, 2009 WL 5061744, at *6 (S.D.N.Y. Dec. 22, 2009) (collecting cases demonstrating that "courts in the Second Circuit have consistently granted interest that commences on the date of the arbitration award"). Post-judgment interest will accrue on the attorney's fees and costs ($1957.50) at the statutory rate pursuant to 28 U.S.C. § 1961 starting from the date of this Order. *Nat. Organics, Inc. v. Nutraceutical Corp.*, No. 01-cv-0384, 2009 WL 2424188, at *9 (S.D.N.Y. Aug. 6, 2009) ("Entitlement to post-judgment interest extends to all money judgments, including awards of attorney['s] fees and costs.").

      SO ORDERED.

                                              */s/ Hector Gonzalez*
                                                HECTOR GONZALEZ
                                             United States District Judge

Dated:  Brooklyn, New York
         May 19, 2025